Eugene Y. Mar (State Bar No. 227071)
emar@fbm.com
Raven Quesenberry (State Bar No. 346250)
rquesenberry@fbm.com
Victoria Constance Huang (State Bar No. 335557)
vhuang@fbm.com
Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for DELL INC. and DELL TECHNOLOGIES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Subpoena to<br><br>NEC Corporation<br><br><u>Out of District Case</u><br><br>CLOUD BYTE LLC,<br><br>Plaintiff,<br><br>vs.<br><br>DELL INC. and<br>DELL TECHNOLOGIES INC.,<br><br>Defendants. | Misc. Case No. 3:25-mc-80113<br><br>[E.D. Tex. Case No. 2:24-cv-637-JRG]<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO ENFORCE SUBPOENA AGAINST NEC CORPORATION TO PRODUCE DOCUMENTS**<br><br>Motion Hearing:<br>Date: TBD<br>Time: TBD<br>Crtm.: TBD<br>Judge: TBD |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that, at a time and before a judge to be determined by the Clerk of the United States District Court for the Northern District of California, Defendants Dell Inc. and Dell Technologies Inc. (collectively, "Dell") will, and hereby do, move the Court for an order pursuant to Federal Rule of Civil Procedure 45 ordering third-party NEC Corporation ("NEC") to comply with the subpoena to produce documents served by Dell on March 20, 2025.

This motion is made pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), which provides that "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."

NEC was properly served via its domestic general manager, NEC Corporation of America on March 20, 2025 under Fed. R. Civ. P. 4(e)(1), which authorizes service according to the laws of "the state…where service is made." *See also id.* 4(h)(1)(A). Under California law, where service was effectuated, service on a foreign corporation's general manager is sufficient to effectuate service on the foreign corporation itself. *See* Cal. Code of Civ. Proc. § 416.10(b); Cal. Corp. Code § 2110. However, NEC has served no responses or objections to the subpoena. NEC failed to serve any objections and thus has waived any objections to the subpoena.

This motion is based on the accompanying Memorandum of Points and authorities, the Declaration of Eugene Y. Mar and exhibits thereto, the proposed order submitted herewith, such other evidence and argument as may be presented at or before any hearing on this motion, and all matters of which the Court may take judicial notice.

Dated: May 8, 2025

FARELLA BRAUN + MARTEL LLP

By: */s/ Eugene Y. Mar*
Eugene Y. Mar

Attorneys for DELL INC. and DELL TECHNOLOGIES INC.

**CERTIFICATE OF CONFERENCE**

I hereby certify that Dell has been unable to meet and confer with counsel for NEC as NEC has not responded to Dell's subpoena and no counsel has been identified as representing NEC in relation to the subpoena. In connection with a separate subpoena served on NEC Corporation of America, a wholly-owned subsidiary of NEC, Dell has met and conferred with outside counsel for NEC Corporation of America on March 27, 2025 and on May 7, 2025. Counsel for NEC Corporation of America, who has represented NEC in other matters, stated that they are not representing NEC in connection with Dell's subpoena to NEC. On May 7, 2025, counsel for NEC Corporation of America also stated on the meet-and-confer they dispute that NEC Corporation was properly served in this matter.

Dated: May 8, 2025

*/s/ Eugene Y. Mar*
Eugene Y. Mar

# TABLE OF CONTENTS

**Page**


I. STATEMENT OF ISSUES TO BE DECIDED ..... 1

II. INTRODUCTION ..... 1

III. BACKGROUND ..... 2

A. NEC Corporation, NEC Corporation of America, IP Wave, and Cloud Byte ..... 2

B. Dell's Attempts to Obtain Discovery from Cloud Byte ..... 4

C. Dell's Subpoena to NEC Corporation ..... 4

IV. JURISDICTIONAL STATEMENT ..... 5

V. LEGAL STANDARDS ..... 5

A. Scope of Discovery Under Rule 45 Subpoenas ..... 5

B. Service of Subpoena Under Federal Rules of Civil Procedure 4 and 45, and California Law ..... 6

VI. ARGUMENT ..... 7

A. The Court Should Order NEC to Produce Documents in Its Possession Responsive to the Subpoena. ..... 7

1. The Requested Documents Are Relevant to Multiple Issues in the Case ..... 7

2. Dell Properly Served NEC With the Subpoena Through NEC Corporation of America, Which is NEC's General Manager Under California Law ..... 9

3. NEC Has Waived Any Objections to the Subpoena ..... 13

B. Dell Would Not Oppose a Timely Request to Transfer This Motion to the Eastern District of Texas ..... 13

VII. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*,
No. 2:21-cv-00172-JRG, Dkt. 168 (E.D. Tex. Jan. 20, 2022) (Ex. 10) ....................................11

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*,
2022 WL 18584501 (E.D. Tex. Dec. 28, 2022), *report and recommendation adopted*, 2023 WL 1478451 (E.D. Tex. Feb. 2, 2023)..............................................................10

*City of Roseville Employees' Ret. Sys. v. Apple Inc.*,
2021 WL 1176641 (N.D. Cal. Mar. 29, 2021) ...............................................................7,9,11,12

*Cloud Byte LLC v. Dell Inc. et al.*,
No. 2:24-cv-637-JRG (E.D. Tex.)..............................................................................................1

*Erickson v. Builder Advisor Grp. LLC*,
2022 WL 3109587 (N.D. Cal. July 6, 2022), *report and recommendation adopted*, 2022 WL 3109563 (N.D. Cal. Aug. 4, 2022)..............................................................13

*Falco v. Nissan N. Am. Inc.*,
987 F. Supp. 2d 1071 (C.D. Cal. 2013).......................................................................................10

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006) ..............................................................................................5,6

*Gray v. Mazda Motor of Am., Inc.*,
560 F. Supp. 2d 928 (C.D. Cal. 2008).........................................................................................10

*Howlink Glob. LLC v. AT&T, Inc.*,
2022 WL 17069109 (E.D. Tex. Nov. 17, 2022)..............................................................................9

*Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*,
578 F. Supp. 2d 1224 (C.D. Cal. 2008)...................................................................................10,12

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019)........................................................................................................8

*Lozada-Leoni v. MoneyGram Int'l, Inc.*,
2020 WL 10046089 (E.D. Tex. July 8, 2020).....................................................................................5

*U.S. ex rel. Miller v. Pub. Warehousing Co. KSC*,
636 F. App'x 947 (9th Cir. 2016) ....................................................................................................7

*In re Pioneer Corp.*,
2019 WL 5401015 (C.D. Cal. Jan. 9, 2019)........................................................................................6

*Poturich v. Allstate Ins. Co.*,
2015 WL 12766048 (C.D. Cal. Aug. 11, 2015) ....................13

*Sanofi-Aventis v. Sandoz, Inc.*,
272 F.R.D. 391 (D.N.J. 2011) ....................6

*Schoonmaker v. City of Eureka*,
2018 WL 5829851 (N.D. Cal. Nov. 7, 2018) ....................13

*VirnetX, Inc. v. Microsoft Corp.*,
2008 WL 8894682 (E.D. Tex. June 4, 2008) ....................6

*Xun v. Daimler AG*,
2020 WL 6784526 (C.D. Cal. Sept. 3, 2020) ....................10

**STATE CASES**

*Cosper v. Smith & Wesson Arms Co.*,
346 P.2d 409 (1959) ....................9,10,11,12

*Yamaha Motor Co. v. Superior Ct.*,
174 Cal. App. 4th 264 (2009) ....................11

**FEDERAL RULES AND REGULATIONS**

Federal Rule of Civil Procedure 4 ....................6,9

Federal Rule of Civil Procedure 4(e)(1) ....................2,6,9

Federal Rule of Civil Procedure 4(h)(1)(A) ....................2,6,9

Federal Rule of Civil Procedure 26 ....................5,6

Federal Rule of Civil Procedure 26(b)(1) ....................6

Federal Rule of Civil Procedure 26(b)(2)(C) ....................6

Federal Rule of Civil Procedure 45 .................... *passim*

Federal Rule of Civil Procedure 45(b)(1) ....................6,9

Federal Rule of Civil Procedure 45(c)(3)(A)(iv) ....................6

Federal Rule of Civil Procedure 45(d)(2)(B) ....................13

Federal Rule of Civil Procedure 45(d)(2)(B)(i) ....................5

Federal Rule of Civil Procedure 45(f) ....................13

**STATE STATUTES**

California Civil Procedure Code
§ 416.10(b) ........................................ 1,7,9

California Corporations Code
§ 2110 ........................................ 1,7,9

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| Asserted Patents | U.S. Patent Nos. 7,739,544; 9,482,632; 9,560,177; 9,629,265; 9,651,320; 9,900,249; and 10,628,273 |
| Cloud Byte | Cloud Byte LLC, Plaintiff in the Underlying Action |
| NEC | NEC Corporation (Cloud Byte's indirect predecessor-in-interest to the Asserted Patents) |
| Mar Decl. | Declaration of Eugene Mar, dated May 8, 2025, submitted concurrently herewith |
| Dell | Dell Inc. and Dell Technologies Inc., Defendants in the Underlying Action |
| IP Wave | IP Wave Pte. Ltd. (Cloud Byte's direct predecessor-in-interest to the Asserted Patents) |
| Underlying Action | *Cloud Byte LLC v. Dell Inc. et al.*, No. 2:24-cv-637-JRG (E.D. Tex.) |

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | "Cloud Byte LLC Intellectual Property Asset Management" web page |
| 2 | "NEC Worldwide" web page |
| 3 | "Notice of the 186th Ordinary General Meeting of Shareholders" |
| 4 | "NEC's patent licensing business forging ahead, IP head reveals" article |
| 5 | Subpoena to NEC Corporation to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (March 20, 2025) |
| 6 | NEC Corporation's Profile with the California Secretary of State |
| 7 | Proof of Service of Subpoena to NEC Corporation |
| 8 | Plaintiff Cloud Byte, LLC's Amended Motion to Approve Request for International Judicial Assistance in Procuring Evidence From Foreign Third Party |
| 9 | "Supply Chain Management" web page |
| 10 | *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-cv-00172-JRG, Dkt. 168 (E.D. Tex. Jan. 20, 2022) |
| 11 | Correspondence between Dell's counsel and NEC Corporation of America's Counsel |
| 12 | "General IT Systems Software Development" web page |
| 13 | "NEC's Digital Platform Underlying DX Offerings" web page |
| 14 | "NEC Announces Opening of Identity Solutions Office in Washington, D.C." web page |

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

## I. STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should enforce Dell's March 20, 2025 subpoena for production of documents served on NEC Corporation by compelling NEC Corporation to produce documents responsive to the subpoena.

## II. INTRODUCTION

In the underlying district court litigation in the Eastern District of Texas pending before Judge Gilstrap in the Marshall Division, plaintiff Cloud Byte asserts infringement of seven U.S. patents originally assigned to NEC Corporation ("NEC"), a Japanese computer and electronics company. *Cloud Byte LLC v. Dell Inc. et al.*, No. 2:24-cv-637-JRG (E.D. Tex.). Last year, NEC transferred a large patent portfolio, including the seven asserted patents, through several intermediate entities until the asserted patents finally landed with Plaintiff Cloud Byte LLC. Cloud Byte initiated litigation against Dell on August 5, 2024 in the Eastern District of Texas. However, to date, highly relevant documents that would typically be possessed by a patent plaintiff, such as licenses, ownership and assignment documents, inventorship materials, specifications and manuals for any products that embody the claimed inventions, and patent marking documents have not been produced. Instead, discovery indicates that NEC has the key documents and information about the asserted patents. Dell, therefore, subpoenaed NEC for these highly relevant documents relating to the asserted patents. Discovery into these categories of documents is critical to many of Dell's defenses in the case.

While NEC is based in Japan, its American subsidiary, NEC Corporation of America has offices in California, is registered to do business in California as an out-of-state corporation, and also has designated an agent for service of process in this state. NEC identifies its American subsidiary as "NEC's Regional Headquarters in North America." Ex. 2. Under California law, service on a foreign corporation's general manager is sufficient to effectuate service on the foreign corporation itself. *See* Cal. Code of Civ. Proc. § 416.10(b); Cal. Corp. Code § 2110 (authorizing service in California upon a foreign corporation via its "general manager in [the] state"). Here, NEC Corporation of America serves as NEC's Regional Headquarters in North America, markets and sells NEC's products in the United States, and thus, is NEC (Japan)'s "general manager"

under California law. Federal Rule of Civil Procedure 4(e)(1) authorizes service, including subpoenas issued under Rule 45, according to the laws of "the state…where service is made." Fed. R. Civ. P. 4(e)(1); *see also id.* 4(h)(1)(A). On March 20, 2025, Dell legally and effectively served NEC with a subpoena to produce documents by serving the subpoena on NEC's general manager in California, i.e. NEC Corporation of America's authorized agent for service.

To date, NEC has not served any objections or responses to the subpoena. As the date to object to the subpoena (14 days after the subpoena is served, i.e., April 3, 2025) has passed, NEC has waived any objections.

Dell certifies that it has also been unable to meet and confer with counsel for NEC as NEC has not responded to Dell's subpoena and no counsel has been identified as representing NEC in relation to the Subpoena. Dell further certifies that it has met and conferred with counsel for NEC Corporation of America, who disputes that service was effective on NEC through serving NEC Corporation of America's agent as the "general manager" for NEC.

Dell thus respectfully requests the Court compel NEC to produce the documents and information in its possession.

## III. BACKGROUND

### A. NEC Corporation, NEC Corporation of America, IP Wave, and Cloud Byte

The seven asserted patents in the Underlying Action in the Eastern District of Texas all originated with NEC. NEC has publicly stated that it is seeking to aggressively assert and monetize its patent portfolio, including by applying cost pressure through litigation in the U.S.: "Litigation is very much a part of the negotiation process from a strategic perspective…in US litigation…the pure cost is enough to put pressure on both parties to get things resolved." Ex. 4. The same article about NEC's litigation strategy revealed that NEC had transferred nearly 200 software patents to a closely related entity known as IP Wave. *Id.* This occurred through NEC's related entity in Singapore, NEC Asia Pacific Pte Ltd. on January 18, 2024. Mar Decl. ¶ 4. NEC Asia Pacific Pte Ltd. received a security interest in some or all of IP Wave's property on February 21, 2024. *Id.* ¶ 5. IP Wave then transferred 179 patents and applications to Cloud Byte on March 5, 2024, less than two weeks after Cloud Byte was incorporated. *Id.* ¶ 4. In turn, Cloud Byte touts

its portfolio with a description that matches NEC. *See* Ex. 1 ("This patent portfolio was developed by a formidable multinational ICT company with over 100 years of experience . . . ."). Soon thereafter, on August 5, 2024, Cloud Byte initiated the Underlying Action.

NEC is a publicly owned corporation organized under the laws of Japan.

NEC Corporation of America is a wholly-owned subsidiary of NEC Corporation. Ex. 3 at 27. NEC Corporation identifies NEC Corporation of America as "NEC's Regional Headquarters in North America," which "helps companies unify their business communications. IT and Networking solutions in USA and Canada through innovative software, applications, development tools and services." Ex. 2 at 1. In messaging to its shareholders, NEC describes NEC Corporation of America as its "[r]egional representative," which "supervis[es] operation in North America, sale of computers-related equipment and communications equipment, and provision of systems integration services etc." Ex. 3 at 27. Particularly relevant here, through its role as the North America headquarter that includes the sale of computers-related equipment, NEC Corporation of America may be involved in the sale of NEC's products that embody the patents under Cloud Byte's infringement theories in the Underlying Action. In addition, NEC and NEC Corporation of America share at least two officers in common: Chris Jackson (NEC Corporation of America's President) and Mitsuhiro Murooka. Mar Decl. ¶ 20.

NEC Corporation of America has a longstanding a presence in California, including offices in Rancho Cordova and Folsom, where NEC Corporation of America employees, among other things, work on NEC's biometrics technology solutions. For example, NEC Corporation of America is actively recruiting for employees to work at an office in Folsom on the "NEC Digital Platform" (Ex. 12), which NEC describes on its website as developed by NEC (Ex. 13) ("NEC has developed the NEC Digital Platform"). NEC Corporation of America's location in Rancho Cordova houses its "Biometric Center of Excellence," which showcases its "latest identity and biometric products." Ex. 14. In addition, it stands to reason that NEC Corporation of America's California-based operations are also involved in "supervising operation in North America, sale of computers-related equipment and communications equipment, and provision of systems integration services." Ex. 3 at 27.

**B. Dell's Attempts to Obtain Discovery from Cloud Byte**

Cloud Byte's document production and discovery responses in the Underlying Action[1] indicate that former assignees of the Asserted Patents, including NEC, retain rights to the Asserted Patents, raising questions about Cloud Byte's standing to pursue the case. Mar Decl. ¶ 2.

Because determining who has "all substantial" rights in the patent is a threshold question necessary to assessing which party has standing to sue, Dell has sought discovery to further evaluate NEC's rights to the asserted patents and to understand the prior licensing of the asserted patents done by NEC. On December 3, 2024, Dell served Cloud Byte with interrogatories covering topics related to NEC's interests in and licensing of the asserted patents. Mar Decl. ¶ 6. Cloud Byte served objections and responses on January 2, 2025. *Id.* Based on those responses, Dell asked Cloud Byte to produce agreements between NEC, IP Wave, and Cloud Byte relating to the Asserted Patents, but Dell has not received the patent sales and transfer agreements pertaining to NEC and the other previous assignees. *Id.* Discovery in the Underlying Action indicates that at least some of those documents are in the control and possession of NEC.

Because of the limited documents produced to Dell discovery in the Underlying Action, Dell has been forced to seek documents that a typical patent plaintiff would possess from NEC, the original assignee of the Asserted Patents.

**C. Dell's Subpoena to NEC Corporation**

On March 20, 2025, Dell served NEC with a subpoena to produce documents and a subpoena to testify at deposition. Ex. 5; Ex. 7. The subpoena to produce documents included 50 targeted requests seeking documents in NEC's possession relating to the Asserted Patents, including patent sales and transfer agreements, licenses, assignments, technical documents relating to products that practice the Asserted Patents, documents related to marking, and documents related to NEC's participation in industry organizations and formation of industry standards that

[1] While Dell is unable to publicly disclose the details of the confidential discovery responses and document that indicate that NEC retains rights to the Asserted Patent due to the restrictions of the Protective Order entered in the Underlying Action, Dell is willing to provide those details to the Court in a sealed submission or another Court-approved process.

are the subject of Cloud Byte's infringement allegations.

NEC Corporation of America is registered to do business in California and its information available through the California Secretary of State identifies Sarai Marin, at a location in Glendale, California as one of its registered agents for service of process. Ex. 6. On March 20, 2025, Dell served Ms. Marin with the subpoena to produce documents to NEC Corporation. Ex. 7.

As of the date of this filing, NEC has ignored the subpoena entirely and has not served any objections or responses to the Subpoena, produced any documents in response, or otherwise communicated with Dell. Dell has also been unable to meet and confer with NEC as NEC has not appeared in response to the Subpoena. In connection with a separate subpoena served on NEC Corporation of America, their outside counsel, who has also represented NEC in other matters, stated they were only representing and responding on behalf of NEC Corporation of America and not the Japanese parent company. Ex. 11. Furthermore, NEC Corporation of America's outside counsel disputed NEC was properly served. Mar Decl., ¶ 16.

## IV. JURISDICTIONAL STATEMENT

The subpoena that is the subject of this motion was issued by the United States District Court for the Eastern District of Texas and calls for documents to be produced in San Francisco, California because the general manager, NEC Corporation of America, has offices in Rancho Cordova, California and Folsom, California and a registered agent of service in this state. San Francisco is within 100 miles of those locations. Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." This Court is in the district where compliance is required and therefore has jurisdiction over the enforcement of the subject subpoena.

## V. LEGAL STANDARDS

### A. Scope of Discovery Under Rule 45 Subpoenas

The scope of discovery under Rule 45 subpoenas is governed by the same standard as discovery under Rule 26. *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006); *see also Lozada-Leoni v. MoneyGram Int'l, Inc.*, 2020 WL 10046089, at *7 (E.D. Tex. July 8, 2020).

Thus, a party may use a subpoena to obtain "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A court may limit discovery if "the discovery sought" is "obtainable from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 45(c)(3)(A)(iv); Fed. R. Civ. P. 26(b)(2)(C); *see also Gonzales*, 234 F.R.D. at 679-80 ("[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.").

Although courts have recognized that Rule 45 subpoenas may risk "unwanted burden thrust upon non-parties," *In re Pioneer Corp.*, 2019 WL 5401015, at *5 (C.D. Cal. Jan. 9, 2019), courts have noted that an "interested non-party" may not "shelter[] under Rule 45" through "agreements or shell entities." *VirnetX, Inc. v. Microsoft Corp.*, 2008 WL 8894682, at *7 (E.D. Tex. June 4, 2008). The court may use its equitable power to prevent this "gamesmanship" and "manipulation of [the court's] liberal discovery policies" from delaying production, "escalat[ing] an accused infringer's litigations costs, and withhold[ing] discoverable information." *Id.* ("Nor will this Court allow a non-party with a substantial economic interest in the lawsuit and substantial control over either the plaintiff or the rights to the patent-in-suit to shield, delay production of, or defray the costs of producing items the plaintiff would be obligated to produce under Rule 26 . . . ."). Similarly, a party may not "use its foreign affiliation with [an affiliate] as both a sword and a shield" to selectively reveal information for its benefit while preventing the disclosure of potentially harmful discovery. *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 396 (D.N.J. 2011).

**B. <u>Service of Subpoena Under Federal Rules of Civil Procedure 4 and 45, and California Law</u>**

Rule 45 of the Federal Rules of Civil Procedure provides that "[s]erving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). Rule 4 authorizes service pursuant to state law. Fed. R. Civ. P. 4(h)(1)(A) ("a domestic or foreign corporation" may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual"); *id.* 4(e)(1) ("an individual . . . may be served in a judicial district of the United States by: . . . following state law

for serving a summons in an action brought in courts of general jurisdiction in the state . . . where service is made”).

Under California law, service of a subpoena on a foreign corporation’s general manager is sufficient to effectuate service on the foreign corporation itself. *See* Cal. Code of Civ. Proc. § 416.10(b); Cal. Corp. Code § 2110 (authorizing service in California upon a foreign corporation via its “general manager in [the] state”); *City of Roseville Employees’ Ret. Sys. v. Apple Inc.*, 2021 WL 1176641, at *13-14 (N.D. Cal. Mar. 29, 2021). Courts “have generally found that a subsidiary may properly be served as a ‘general manager’ where: 1) ‘the parent corporation was foreign and otherwise not readily available for service within California[;]’ and 2) there [is] ‘a sufficiently close connection with the parent[,] [which] depends upon the frequency and quality of contact between the parent and the subsidiary, the benefits in California that the parent derives from the subsidiary, and the overall likelihood that service upon the subsidiary will provide actual notice to the parent.’” *Id.* (quoting *U.S. ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App’x 947, 949 (9th Cir. 2016)) (alterations in original).

## VI. <u>ARGUMENT</u>

### A. <u>The Court Should Order NEC to Produce Documents in Its Possession Responsive to the Subpoena.</u>

#### 1. The Requested Documents Are Relevant to Multiple Issues in the Case

The requested documents largely relate to the following categories: patent sales and transfer agreements, licenses, assignments, technical documents relating to products that may practice the Asserted Patents, marking documents, documents relating to the alleged inventions in the Asserted Patents, and documents pertaining to NEC’s participation in industry organizations and formation of industry standards at issue in Cloud Byte’s infringement assertions. The documents sought are relevant to numerous issues that are critical to Dell’s defenses in the Underlying Action, including issues related to standing, validity, implied license, and damages. Dell seeks the requested documents from NEC because Dell has not received these documents in the Underlying Action and discovery indicates that the requested documents are in the possession of NEC.

For example, the agreements between and among Cloud Byte, NEC, and IP Wave are crucial to numerous issues in the case. First, these agreements are necessary to determine the threshold question of whether Cloud Byte is even a "patentee" with standing to sue. As the Federal Circuit has explained, when a prior owner retains the bulk of the rights in the patent, the transferee has no standing to sue in their own name. *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229, 1232, 1234 (Fed. Cir. 2019). The substantive rights, not the terminology used to describe the transfer, determine who is the patentee. *See id.* at 1230 (noting the analysis is not "reliant on labels").

Further, Dell seeks from NEC any licenses to the Asserted Patents, which are directly relevant to the value of the Asserted Patents and other defenses. Discovery in the Underlying Case indicates that licenses may exist and would be in the possession of NEC.

As another example, documents relating to the Asserted Patents, such as materials relating to the conception and reduction to practice of the alleged inventions, products potentially embodying the alleged inventions, and standards relating to the Asserted Patents, are directly relevant to the validity and value of the Asserted Patents.

Cloud Byte has all but conceded that some of these documents are relevant to the Underlying Action by requesting a letter rogatory seeking from NEC very similar categories of documents, such as documents relating to the conception and reduction to practice of the purported inventions and the marking of products allegedly practicing the Asserted Patents. Ex. 8. However, Dell should not be forced to pursue a letter rogatory to seek discovery from NEC when it has legally and effectively served NEC in California through NEC's general manager and because a letter rogatory to Japan seeking document discovery would be ineffective. Japan does not have any civil statutes that permit a Japanese court to compel a Japanese company to produce documents, thus, the Japanese courts are not in position to enforce a document subpoena that comes by way of a letter rogatory, and NEC's compliance with an American subpoena served through a letter rogatory would be voluntary.

**2. Dell Properly Served NEC With the Subpoena Through NEC Corporation of America, Which is NEC's General Manager Under California Law**

On March 20, 2025, Dell served the subpoena to produce documents on NEC by serving the agent for service of process in California for NEC Corporation of America as NEC's "general manager" in California. Ex. 7. Federal Rule of Civil Procedure 45 sets forth the requirements for a subpoena and states that service requires "delivering a copy to the named person," but does not specify how delivery to a corporation is to be accomplished. Fed. R. Civ. P. 45(b)(1). As a result, "many courts have looked to Rule 4 of the Federal Rules of Civil Procedure, governing service, to determine the requirements for serving a subpoena on a corporation (whether foreign or domestic) within the United States." *City of Roseville*, 2021 WL 1176641, at *10 (collecting cases); *see also Howlink Glob. LLC v. AT&T, Inc.*, 2022 WL 17069109, at *1 (E.D. Tex. Nov. 17, 2022). Rule 4, in turn, allows for a corporation to be served in a manner approved under the law of the state where service is made. Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). This service constituted effective service on NEC because, under Fed. R. Civ. P. 4, service is effective under any authorized method of service in the state where service took place, and here, California law provides that a foreign corporation may be served by serving the foreign corporation's "general manager in this state." Cal. Code of Civ. Proc. § 416.10(b); Cal. Corp. Code § 2110.

Because Dell served NEC in Glendale, California, California law applies, and California provides that service on a foreign corporation's general manager in California is sufficient for service on the foreign corporation itself. NEC is a Japanese corporation that is generally not available in California for service of process. However, NEC Corporation of America is a wholly owned subsidiary of NEC that acts as NEC's representative in North America and supervises NEC's operations in the region, including the "sale of computers-related equipment and communications equipment, and provision of systems integration services etc." Ex. 3 at 27. As such, NEC Corporation of America is NEC Corporation's "general manager."

The seminal California Supreme Court cases on the issue, *Cosper v. Smith & Wesson Arms Co.*, establishes that the standard for what constitutes a "general manager" for services is relatively low, and is binding here. There, the Court held that a California representative of a Massachusetts

gun manufacturer constituted the manufacturer's "general manager" for service purposes, even where the relationship between the manufacturer and the California representative was limited to a non-exclusive arrangement for the representative to promote the sale of the manufacturer's guns based on commission. *Cosper v. Smith & Wesson Arms Co.*, 346 P.2d 409, 412 & 414 (1959). Although there was no formal corporate relationship between the manufacturer and the representative, the Court found that the arrangement provided the manufacturer with "substantially the business advantages that it would have enjoyed 'if it conducted its business through its own offices or paid agents in the state.'" *Id.* at 414. Here, the relationship between NEC and NEC Corporation of America is even closer because NEC Corporation of America has locations in California and is a wholly-owned subsidiary of NEC that functions as NEC's North American headquarters and oversees and implements NEC's operations in the region. NEC Corporation of America also supervises the sales of NEC's computers-related equipment. Ex. 3 at 27.

Subsequent California state court cases and federal court cases applying California law regarding service of process confirm that *Cosper* remains controlling law, and provide further guidance on how to determine whether an in-state corporation, like NEC Corporation of America, constitutes a general manager of a foreign corporation, like NEC. *See Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1226 (C.D. Cal. 2008) (finding domestic distributor was a general manager authorized to receive service for Japanese manufacturer); *Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*, 2022 WL 18584501, at *5 (E.D. Tex. Dec. 28, 2022) (finding service on agent for service of process for sole domestic distributor of related foreign entities sufficient under California law for service on foreign entities), *report and recommendation adopted*, 2023 WL 1478451 (E.D. Tex. Feb. 2, 2023); *Gray v. Mazda Motor of Am., Inc.*, 560 F. Supp. 2d 928, 931 (C.D. Cal. 2008) (finding service on domestic distributor as general manager of foreign corporation sufficient to effectuate service on foreign corporation); *Xun v. Daimler AG*, 2020 WL 6784526, at *2 (C.D. Cal. Sept. 3, 2020) (finding service on domestic distributor subsidiary sufficient to effectuate service on foreign corporation and rejecting argument that "a measure of formal control" by the subsidiary over the parent corporation was required); *Falco v. Nissan N. Am. Inc.*, 987 F. Supp. 2d 1071, 1077 (C.D. Cal. 2013) (finding subsidiary was foreign

parent corporation's "general manager" for service purposes and that the two entities were "independent businesses that strictly observe[d] corporate formalities and that [foreign corporation] [did not] exercise control over [subsidiary's] activities h[ad] no effect on this conclusion"); *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-cv-00172-JRG, Dkt. 168 (E.D. Tex. Jan. 20, 2022) (Ex. 10) (finding that foreign entity was properly served under California law through its domestic subsidiary).

For example, in *Yamaha Motor Co. v. Superior Ct.*, a California appellate court denied a writ seeking to vacate an order denying a motion to quash where service on a foreign parent company was made by serving a wholly-owned subsidiary that the foreign company described as its "Regional Headquarters for North America." 174 Cal. App. 4th 264, 268 (2009). There, the Court reasoned that the facts at hand, even more strongly than those in *Cosper*, supported finding that the subsidiary would likely apprise the foreign company of any service in California. *Id.* at 274 ("If it was reasonably certain that a relatively casual sporting goods representative would apprise the 'foreign' manufacturer of service in *Cosper*, it is doubly reasonably certain Yamaha–America will apprise Yamaha–Japan of any service in California."). Similarly, here, the Court should find that it is reasonably certain that the NEC Corporation of America, which NEC describes as "NEC's Regional Headquarters in North America" (Ex. 2), would apprise NEC of any service in California. Indeed, Dell specifically notified outside counsel for NEC Corporation of America, who for other matters also serves as counsel for NEC, that it would file this motion to compel if NEC did not respond to the subpoena. Ex. 11. It would be reasonable to expect under these circumstances that NEC Corporation of America apprised NEC of the subpoena.

Further, in *City of Roseville*, a Court in this District found that service of a subpoena seeking documents from a non-party foreign corporation on a wholly-owned subsidiary of the foreign corporation was adequate to effectuate service on the foreign corporation. *City of Roseville*, 2021 WL 1176641, at *14. The Court noted that the subsidiary was described in the foreign corporation's annual report as a "sales and repair center," and that the foreign corporation claimed that the subsidiary provided technical support and business coordination to certain existing customers of the foreign corporation. Accordingly, the Court concluded that this

evidence was "sufficient to demonstrate" that the subsidiary "act[ed] as a liaison between customers in the United States and [the foreign corporation], giving [the foreign corporation] 'substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state[.]'" *Id.* at *13 (quoting *Khachatryan*, 578 F. Supp. 2d at 1227). The Court further explained that "these ties ensure that there is contact of sufficient rank and character to make it reasonably certain that [the foreign corporation] would be apprised of the service of process on [the subsidiary]." *Id.*

Here, NEC states that NEC Corporation of America "supervis[es] operation in North America, sale of computers-related equipment and communications equipment, and provision of systems integration services etc." (Ex. 3 at 27), demonstrating that NEC Corporation of America, with its California locations, acts as a "liaison between customers in the United States and [NEC Corporation]," such that NEC receives "substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state." *See City of Roseville*, 2021 WL 1176641, at *13. For example, NEC Corporation of America's locations in California showcase and develop products, including those that NEC describe as developed by NEC. Ex. 12; Ex. 13. Moreover, NEC maintains frequent and substantive contact with NEC Corporation of America that indicates a strong certainty that NEC would be appraised of the service of summons on NEC Corporation of America. *Id.* at *13. For example, NEC states it "works with procurement managers at regional headquarters" in "North America" and other regions to "conduct quarterly operational reviews in line with their annual activity policies and plans[.]" Ex. 9. Accordingly, NEC Corporation of America is of "sufficient character and rank to make it reasonably certain that" NEC "would be apprised of the service. *See Cosper*, 346 P.2d at 414.

Moreover, NEC almost certainly has actual notice of Dell's subpoena here. First, Dell specifically notified outside counsel for NEC Corporation of America—who for other matters also serves as counsel for NEC—of its subpoena to NEC. Ex. 11. Second, at least two individuals, Chris Jackson (NEC Corporation of America's President) and Mitsuhiro Murooka, serve as officers of both NEC and NEC Corporation of America. Mar Decl. ¶ 20. Thus, because NEC

Corporation of America received and has notice of the Dell's subpoena, NEC is necessarily on notice of Dell's subpoena through the shared officers.

**3. NEC Has Waived Any Objections to the Subpoena**

NEC has waved any grounds for objections to the Subpoena by failing to serve any objections within 14 days of being served with the subpoena. Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."). NEC cannot deny that it has notice of Dell's subpoena. Dell's counsel has been in detailed negotiations with counsel representing NEC Corporation of America regarding a separate subpoena served on NEC Corporation of America, and notified counsel for NEC Corporation of America that Dell would file this motion to compel if NEC did not respond to the subpoena. Mar Decl. ¶ 16. The same counsel has represented NEC in other cases. *Id.* Counsel representing Cloud Byte in the Underlying Action is also aware of Dell's subpoena to NEC. *Id.* ¶ 12.

Accordingly, NEC should be ordered to produce all responsive documents without objections. *See Schoonmaker v. City of Eureka*, 2018 WL 5829851, at *1 (N.D. Cal. Nov. 7, 2018) (granting motion to compel based on finding that non-party failed to timely object and ordering non-party to produce all responsive documents without objections); *see also Erickson v. Builder Advisor Grp. LLC*, 2022 WL 3109587, at *3 (N.D. Cal. July 6, 2022) (recommending the District Court order non-party to show cause why it should not be held in contempt for failure to comply with Rule 45 subpoena after finding that the third party's failure to serve timely objections waived all grounds for objection), *report and recommendation adopted*, 2022 WL 3109563 (N.D. Cal. Aug. 4, 2022); *Poturich v. Allstate Ins. Co.*, 2015 WL 12766048, at *2 (C.D. Cal. Aug. 11, 2015) (granting motion to compel and ordering non-party to produce all responsive documents without objections).

**B. Dell Would Not Oppose a Timely Request to Transfer This Motion to the Eastern District of Texas**

If NEC should timely request that the Court transfer this motion to Judge Gilstrap in Marshall Divisions of the Eastern District of Texas pursuant to Federal Rule of Civil Procedure

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

45(f), Dell would not oppose transfer to the Eastern District of Texas.

## VII. CONCLUSION

Dell therefore respectfully requests that the Court compel NEC Corporation to comply with the subpoena to produce documents and produce responsive documents within 10 days. Dell further requests that the Court award Dell all other relief to which it is entitled.

Dated: May 8, 2025

FARELLA BRAUN + MARTEL LLP

By: */s/ Eugene Y. Mar*
Eugene Y. Mar

Attorneys for DELL INC. and DELL TECHNOLOGIES INC.